UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY MILLER,

    Plaintiff,                                   Hon. Robert J. Jonker

v.                                            Case No. 1:17-cv-690

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

1

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 52 years of age on his alleged disability onset date. (PageID.185). He possesses an eleventh grade education and worked previously as an order picker and material handler. (PageID.44, 58). Plaintiff applied for benefits on May 1, 2014, alleging that he had been disabled since October 3, 2013, due to back pain, depression, and high blood pressure. (PageID.185-86, 211). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.100-83).

On May 16, 2016, Plaintiff appeared before ALJ James Prothro with testimony being offered by Plaintiff and a vocational expert. (PageID.53-98). In a written decision dated June 29, 2016, the ALJ determined that Plaintiff was disabled as of April 14, 2016, but not prior thereto. (PageID.34-47). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.23-27). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) lumbar degenerative disc disease; (2) stenosis; (3) status-post L3-L4, L5-S1 decompression, laminectomy, and fusion; (4) a history of lumbar laminectomy in 1991; (5) post laminectomy syndrome; (6) obesity; (7) anxiety; and (8) depression, severe impairments that whether considered alone or in combination with other

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.36-38). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can only occasionally climb, balance, stoop, kneel, crouch, and crawl; (2) he is limited to simple work; and (3) he cannot perform fast-paced work. (PageID.38).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 67,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.89-98). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand

jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). The ALJ further determined, however, that as of April 14, 2016, Plaintiff was considered disabled pursuant to the Medical-Vocational Guidelines (aka the Grids). (PageID.46-47). Accordingly, the ALJ concluded that Plaintiff was entitled to disability benefits beginning on April 14, 2016, but not prior thereto.

I.        **Relevant Medical History**

On October 7, 2013, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "mild" to "moderate" stenosis. (PageID.321). On October 30, 2013, Plaintiff underwent lumbar fusion surgery performed by Dr. Clifford Jones. (PageID.356-57). Treatment notes dated December 19, 2013, indicate that Plaintiff's pain and functional abilities were improved. (PageID.365-66). X-rays of Plaintiff's lumbar spine revealed "good anatomic alignment" and Plaintiff exhibited 5/5 strength in his lower extremities. (PageID.365). Dr. Jones concluded that Plaintiff was "doing well." (PageID.366). Treatment notes dated January 16, 2014, indicate that Plaintiff was "making gradual progress." (PageID.406). Plaintiff reported that "most of the shooting radicular pain is gone" and he was "doing a modest amount of walking." (PageID.406). Treatment notes dated February 4, 2014, indicate that Plaintiff "is not attending physical therapy and is not attending behavioral pain management." (PageID.426). Plaintiff also reported that he was walking two hours daily. (PageID.426).

Treatment notes dated February 24, 2014, indicate that Plaintiff exhibited 5/5 strength in "all muscle groups" and ambulated without difficulty. (PageID.367). Dr. Jones recommended that Plaintiff participate in physical therapy and maintain a home exercise program.

(PageID.368). Treatment notes dated March 27, 2014, indicate that Plaintiff's radicular pain has "responded fairly well" to surgery. (PageID.405). On April 22, 2014, Plaintiff was discharged from physical therapy for non-attendance. (PageID.401). Treatment notes dated April 24, 2014, indicate that Plaintiff's radicular symptoms "are fairly well in remission." (PageID.404).

Treatment notes dated June 11, 2014, indicate that Plaintiff's "pain has improved approximately 60%" and his "physical function has significantly improved." (PageID.418). A physical examination revealed negative straight-leg raising and normal strength and muscle tone. (PageID.419-20). Treatment notes dated August 18, 2014, reveal that Plaintiff exhibited 5/5 strength in all muscle groups and x-rays of Plaintiff's lumbar spine revealed "good anatomic alignment." (PageID.445). Treatment notes dated August 21, 2014, indicate that Plaintiff "is not taking medications as prescribed." (PageID.497). The results of a physical examination were unremarkable. (PageID.497). Treatment notes dated September 25, 2014, indicate that straight leg raising was negative, Spurling's test[2] was negative, and Plaintiff exhibited normal muscle strength. (PageID.492).

Treatment notes from early 2015 through early 2016 reveal that Plaintiff experienced positive straight leg raising and diminished effectiveness of the pain injections he was receiving. (PageID.451-52, 454-56, 459-60, 464-65, 469, 475-76). Treatment notes dated April 14, 2016, however, revealed normal strength and muscle tone and negative straight leg raising. (PageID.510-11). An examination of Plaintiff's lumbar spine revealed normal lordosis, negative

---

[2] **Error! Main Document Only.** A positive Spurling's test suggests the presence of a cervical nerve root disorder. Thomas W. Woodward, M.D., and Thomas M. Best, M.D., Ph.D., *The Painful Shoulder: Part I Clinical Evaluation*, American Family Physician, May 15, 2000, *available at*, http://www.aafp.org/afp/20000515/3079.html (last visited May 22, 2018).

7

facet signs, non-provocative sacroiliac joints, and no evidence of trigger point tenderness. (PageID.510-11).

## II.        The ALJ Properly Evaluated the Medical Opinion Evidence

Two of Plaintiff's treating physicians, Dr. John Stevenson and Dr. Sean Growney, offered opinions to which the ALJ afforded less than controlling weight.   Plaintiff argues that he is entitled to relief because the ALJ failed to articulate good reasons for discounting the opinions in question.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into her medical condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."  *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)).   The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human

*Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

      A.      Dr. John Stevenson

On April 24, 2014, Dr. Stevenson reported that Plaintiff could return to work subject to the following limitations: (1) he could not perform "excessive" bending or twisting; (2) he could not lift more than "10-15" pounds; (3) he "must be able to change positions frequently, or as needed"; and (4) he was limited to "light duty only." (PageID.403). As the ALJ observed, with the exception of the specific limitation to lifting no more than 10-15 pounds, the doctor's opinions were vague "and not particularly helpful in determining [Plaintiff's] residual functional capacity." (PageID.43). With respect to the specific lifting restriction, the ALJ noted that such was inconsistent with the medical record subsequent to Plaintiff's surgery. As the discussion of the medical evidence above indicates, this assessment is supported by substantial evidence. In sum, the ALJ's decision to discount Dr. Stevenson's opinion is supported by substantial evidence.

      B.      Dr. Sean Growney

On April 20, 2016, Dr. Growney was questioned by Plaintiff's counsel. (PageID.514-31). The doctor reported that Plaintiff was unable to lift more than five pounds and was unable to bend, twist, squat, or perform repetitive movements. (PageID.525). The doctor also reported that Plaintiff required a sit-stand option. (PageID.528). The ALJ concluded that while Dr. Growney's opinion was supported by the medical evidence as of April 2016, it was inconsistent with the evidence prior thereto.

As noted above, the medical evidence indicates that Plaintiff's condition initially improved following surgery, but that by early 2016, there were indications that Plaintiff's symptoms were again deteriorating. While the ALJ ultimately found Plaintiff disabled pursuant to the Grids beginning in April 2016, by finding that Dr. Growney's opinion was supported as of

April 2016, the ALJ was essentially indicating that even if the Grids did not apply, Plaintiff's RFC would have been significantly diminished beginning in April 2016, likely to a disabling degree. While it can be argued that the diminution of Plaintiff's RFC began shortly prior to April 2016, the ALJ's assessment in this regard and, therefore, his assessment of Dr. Growney's opinion is nevertheless supported by substantial evidence.

**III.        The ALJ's Credibility Assessment is Supported by Substantial Evidence**

At the administrative hearing, Plaintiff testified that he was far more limited than the ALJ determined in his RFC assessment.  For example, Plaintiff testified that the pain he experiences is so intense that "medication doesn't help" and the only way he can obtain relief "is to lie down."  (PageID.73).   Plaintiff reported that "it's a struggle just to do minor chores around the house without having to lay down and take many, many breaks."  (PageID.72).  Plaintiff reported that he "can't really sit" for any length of time.  (PageID.77).  Plaintiff indicated that he is unable to "do anything" for more than 2-3 hours before having to lie down for 2-3 hours. (PageID.80).    The ALJ found that Plaintiff's testimony was "not fully supported" and, accordingly, discounted Plaintiff's subjective allegations.   Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability."  *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same).   As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled."  20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127

11

F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009).  Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted).  This standard is often referred to as the *Duncan* standard.  *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)).  However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility

of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

The administrative hearing in this matter occurred on April 20, 2016, six days after the date the ALJ ultimately found Plaintiff to be disabled. As the medical evidence discussed above indicates, while Plaintiff's testimony may have been consistent with the medical evidence as of the date of he was found to be disabled, the record prior thereto is simply not consistent with Plaintiff's testimony. In sum, the ALJ's reasons for discounting Plaintiff's subjective allegations are supported by substantial evidence.

13

**IV.        The ALJ's RFC Assessment is Supported by Substantial Evidence**

At Step III of the sequential disability assessment process, the ALJ found that Plaintiff experienced "moderate difficulties" with respect to concentration, persistence, and pace. (PageID.38).   Plaintiff argues that he is entitled to relief because it constitutes error for an ALJ to find "moderate" restrictions with respect to concentration, persistence, and pace and then fail to incorporate such restrictions into the claimant's RFC.   The ALJ in his RFC assessment specifically found that Plaintiff was limited to simple work and could not perform fast-paced work. These specific limitations sufficiently incorporate Plaintiff's limitations with respect to concentration, persistence, and pace.   Plaintiff's argument that the ALJ erred by failing to also include a "durational limitation" in his RFC is rejected as Plaintiff has identified no evidence in the record supporting such a limitation.   Plaintiff's argument that a finding, at Step III, of moderate limitations in concentration, persistence, and pace requires the inclusion in an RFC, at Step IV, of certain specific limitations or restrictions has been rejected by the Sixth Circuit.   *See, e.g., Kepke v. Commissioner of Social Security*, 636 Fed. Appx. 625, 635 (6th Cir., Jan. 12, 2016). The ALJ's RFC assessment is supported by substantial evidence.   Accordingly, this argument is rejected.

## CONCLUSION

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).

Failure to file objections within such time waives the right to appeal the District Court's order.

*See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                                    Respectfully submitted,

Date: May 23, 2018                                        /s/ Ellen. S. Carmody
                                                          ELLEN S. CARMODY
                                                          U.S. Magistrate Judge